CHARLES DAVIS, as Receiver of THE ELMIRA NATIONAL BANK,
Respondent, *v.* CHARLES H. KNIPP, Appellant.

*National bank — purpose of the National Banking Law — a claim against a bank
purchased after its insolvency and before the appointment of a receiver — cannot be
set off against a claim of the bank.*

Under the provisions of the National Banking Law, sections 5236 and 5242 of the
United States Revised Statutes, the rights of creditors of a national bank
become fixed at the time of an act of insolvency upon the part of the bank.

The receiver of a national bank is a trustee for creditors, and represents also to
some extent the bank and its stockholders.

The purpose of the United States statute in question was to prevent preferences
among creditors, unless such preferences were based on some right that had
accrued before insolvency.

A receiver of a national bank having brought an action upon a promissory note
made by the defendant and owned by the bank, the defendant interposed an
answer setting up by way of counterclaim the fact that two days after the bank
suspended business it was indebted to the firm of Knipp & Clark, of which he
was a member, in a sum named for moneys deposited by such firm; that Knipp
& Clark gave the defendant a check for the moneys, and assigned to him their
claim, and that the defendant had been prevented from presenting the check
for payment, because the banking house was closed and its business was
suspended;

Upon appeal from an interlocutory judgment sustaining a demurrer interposed
by the plaintiff,

*Held,* that as the defendant had purchased the claim against the bank, after the
bank had committed an act of insolvency, although before the appointment of
a receiver, the claim was not a proper subject of offset under the statutes of
the United States, nor under the provisions of section 502 of the Code of Civil
Procedure.

APPEAL by the defendant, Charles H. Knipp, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 15th day of August, 1895, sustaining the plaintiff's demurrer to the defendant's answer, and also from the decision and order of the court, filed in said clerk's office on the 15th day of August, 1895, directing the entry of said judgment.

*Youmans & Moss* and *Roswell R. Moss,* for the appellant.

*Charles H. Peck,* for the respondent.

MERWIN, J. :

In the complaint it is alleged that The Elmira National Bank was incorporated as a national banking association on August 1, 1887, under the laws of the United States, and as such carried on the business of banking at Elmira down to and until the 23d day of May, 1893, when it became insolvent, closed its doors and then and there suspended and discontinued its business, and has not since resumed the same ; that on the 26th of May, 1893, the Comptroller of the Currency of the United States having become satisfied of the insolvency of the bank, and being thereto duly authorized by law, appointed the plaintiff, Charles Davis, receiver of the ·bank by a certificate dated that day, and the plaintiff duly qualified, and on the 2d of June, 1893, entered upon the trust, took possession of the assets of the bank, and ever since has been and now is engaged in the discharge of his duties as such receiver, among which duties is the collection of all debts due the bank ; that on or about the 18th of February, 1893, the defendant, for value received, executed and delivered to the bank his promissory note for $500, payable to the order of the bank, and at the bank three months after the date thereof, and this note was transferred to the plaintiff as such receiver, and is still held and owned by him as such ; that the note was duly presented for payment, and no part has been paid except forty-nine dollars and thirty-one cents, paid September 28, 1893.

In the answer no part of the complaint is denied except the allegation of payment. In the second count of the answer, being one of the counts demurred to, it is alleged by way of offset and counterclaim that the said bank is such corporation and the plaintiff such receiver thereof as in the complaint alleged ; that on the 25th of May, 1893, the bank was indebted to the firm of Knipp & Clark in the sum of forty-six dollars and ninety-four cents for moneys theretofore deposited by them therein, and at the date named the said firm gave to defendant a check for said moneys, and assigned to defendant their claim therefor ; that the defendant has been prevented from presenting the check for payment by reason of the fact that prior to and on the 25th of May, 1893, the bank and its banking house was and has continued to be closed and its business suspended, it refusing and neglecting to pay all and every of its obligations.

The other counts demurred to are in the same form except as to the amount of the debt and the name of the depositor. All are for claims assigned intermediate the failure of the bank and the appointment of the receiver.

The demurrer is upon the grounds that the counts demurred to are respectively insufficient in law upon the face thereof, and that they do not state facts sufficient to constitute a cause of action.

It is not claimed that the defendant has any cause of action against the receiver except by way of offset to the claim sued upon.

The insolvency of the bank on the 23d of May, 1893, is admitted. (*Long v. Mayor*, etc., 81 N. Y. 427.) After that, and before the appointment of the receiver, the defendant purchased claims against the bank. Are they available to him in this action by way of offset? The defendant claims that his rights are to be determined as of the date of the appointment of the receiver. The plaintiff claims that the right of offset must be determined as of the date of the insolvency.

The provisions of the National Banking Law (U. S. Rev. Stat.), which are claimed to be applicable, are as follows:

"Sec. 5236. From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the Comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held."

"Sec. 5242. All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insol-

vency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding in any State, county or municipal court."

The question involved upon this appeal was considered in *Venango National Bank* v. *Taylor* (56 Penn. St. 14), and it was there held that the defendant, a debtor of the bank, could not use as an offset a claim of a depositor purchased the day after the bank, being insolvent, closed its doors, and before the appointment of a receiver. It would give a preference to one creditor of the bank after the act of insolvency, and would defeat the primary object of the statute. The doctrine of that case was approved in *Scott* v. *Armstrong* (146 U. S. 511), where it is said: " The state of case where the claim sought to be offset is acquired after the act of insolvency is far otherwise, for the rights of the parties become fixed as of that time, and to sustain such a transfer would defeat the object of these provisions. The transaction must necessarily be held to have been entered into with the intention to produce its natural result, the preventing of the application of the insolvent's assets in the manner prescribed."

In *Snyders* v. *Armstrong* (37 Fed. Rep. 18, 21) it is said that the fact that the claim sought to be set off was assigned to the debtor of the bank after the act of insolvency " makes all the difference imaginable, for it is well settled that the rights of the parties become fixed at the moment and by the act of insolvency, and any subsequent change of the then situation, by assignment or other transfer, cuts off this equity of ' insolvency set-off,' if I may call it so."

In *Armstrong* v. *Warner* (49 Ohio St. 376, 391) the equitable right of set-off existed at the time of the failure, and was, therefore, allowed. In *National Bank* v. *Colby* (21 Wall. 609) it was held that an attachment against the property of a national bank, organized under the act of 1864, obtained after the bank became insolvent and before the appointment by the Comptroller of a receiver, was not good as against the receiver. The claim sustained by the court in *Hughitt* v. *Hayes* (136 N. Y. 163, 165) related to demands held by the plaintiff against the bank at the time of its failure.

The receiver is a trustee for creditors (*Scott* v. *Armstrong*, 146 U. S. 507) and represents also to some extent the bank and its stockholders. (*Case* v. *Terrell*, 11 Wall. 202.) The statute was intended to prevent preferences among creditors (*Robinson* v. *Nat. Bank of Newberne*, 81 N. Y. 393) unless based on some right that had accrued before insolvency. Very clearly the object of the law would be frustrated if a valid set-off could be obtained by a debtor under the circumstances alleged in this case. Nor do we think that the defendant, under the provisions of section 502 of the Code of Civil Procedure, acquired any right of set-off superior to the claim of the receiver. We are referred to no authority that sustains that proposition. The case of *Elmira Savings Bank* v. *Davis* (142 N. Y. 590) is based on an entirely different theory. There the right of plaintiff was initiated before insolvency. The assets of the bank are in the hands of the receiver to be administered under the Banking Law (*Rosenblatt* v. *Johnston*, 104 U. S. 463), and that law, so far as applicable, must control in this action although it is brought in a State court. We are of the opinion that as against the receiver the defendant upon his assigned claims has no right of set-off. The judgment must, therefore, be affirmed.

HARDIN, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.